Lawrence J. Semenza, III, Esq., Bar No. 7174
Email: ljs@skrlawyers.com
Jarrod L. Rickard, Esq., Bar No. 10203
Email: jlr@skrlawyers.com
SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803
Facsimile:  (702) 920-8669

John N. Ellison, Esq. (*pro hac vice* application forthcoming)
Email: JEllison@ReedSmith.com
David M. Halbreich, Esq. (*pro hac vice* application forthcoming)
Email: DHalbreich@ReedSmith.com
REED SMITH LLP
Three Logan Square
1717 Arch Street Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile:  (215) 851-1420

*Attorneys for MGM Resorts International,*
*Mandalay Bay LLC, Mandalay Resorts Group,*
*MGM Resorts Festival Grounds, LLC and*
*MGM Resorts Venue Management, LLC*

**UNITED STATES DISTRICT COURT FOR THE**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MGM RESORTS INTERNATIONAL and MANDALAY BAY, LLC, and MANDALAY RESORTS GROUP, and MGM RESORTS FESTIVAL GROUNDS, LLC and MGM RESORTS VENUE MANAGEMENT, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>Defendant. | Case No.<br><br><br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

COME NOW Plaintiffs, MGM RESORTS INTERNATIONAL ("MGM Resorts"), MANDALAY BAY, LLC ("Mandalay Bay"), MANDALAY RESORTS GROUP ("Mandalay

Resorts"), MGM RESORTS FESTIVAL GROUNDS, LLC ("MRFG"), and MGM RESORTS VENUE MANAGEMENT, LLC ("MRVM") (collectively herein, "MGM"), by and through their counsel, for their Complaint against Defendant, ZURICH AMERICAN INSURANCE COMPANY ("Zurich"), for breach of contract, declaratory relief, tortious breach of the implied covenant of good faith and fair dealing (bad faith) and violation of Nevada's Unfair Claims Settlement Practices Act, allege and state as follows:

## NATURE OF ACTION

1. This is a civil action for breach of contract, declaratory relief, bad faith, breach of the implied covenant of good faith and fair dealing, and violations of the Unfair Claims Settlement Practices Act, arising out of the Defendant's wrongful breach of its duty to defend MGM, breach of its duty of good faith and fair dealing, and bad faith conduct with respect to claims made against MGM and other defendants by third parties (the "Third-Party Plaintiffs") concerning an incident that occurred at and near the Mandalay Bay Resort & Casino and the Las Vegas Village during the Route 91 Harvest Country Music Festival, on October 1, 2017 (the "Event").

2. Zurich accepted MGM's claim related to the Event under its insurance policy and acknowledged its defense obligation to MGM, but Zurich has not fully honored its contractual obligations. Insurance coverage related to the Event is not in dispute in this action.

## THE PARTIES

3. Plaintiff MGM Resorts is a Delaware corporation with substantial operations in Las Vegas, Nevada.

4. Plaintiff Mandalay Bay is a Nevada limited liability company, as successor by conversion from Mandalay Corporation, with its principal place of business in Las Vegas, Nevada. Mandalay Bay is a wholly-owned subsidiary of Mandalay Resorts.

5. Plaintiff Mandalay Resorts is organized in Nevada and is a wholly-owned subsidiary of MGM Resorts.

6. Plaintiff MRFG is organized in Nevada and is a wholly-owned subsidiary of Mandalay Resorts, with its principal place of business in Las Vegas, Nevada.

7. Plaintiff MRVM is organized in Nevada and is a wholly-owned subsidiary of MGM

Resorts, with its principal place of business in Las Vegas, Nevada.

8. Defendant Zurich is a New York corporation that is headquartered in Schaumberg, Illinois.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1) and § 1332(c)(1), because the amount in controversy (exclusive of interest and costs) exceeds $75,000, and because there is complete diversity of citizenship of the parties.

10. Venue for this action is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) because Zurich is a resident of this judicial district for purposes of 28 U.S.C. § 1391(a)(2) and because a substantial part of the events or omissions giving rise to this claim occurred in and around this judicial district.

## GENERAL ALLEGATIONS

### The Event and Ensuing Litigation Against MGM

11. The Event occurred on October 1, 2017, and was a tragic, unexpected, unforeseeable occurrence perpetrated by a deranged, now-deceased, individual who will not be dignified by being named here. During the Event, this evil person carried out a cold, calculated plan in which he was intent on murdering and maiming concertgoers, passersby and employees, by firing deliberately-modified assault rifles into a crowd of people at the Route 91 Harvest Country Music Festival, resulting in senseless loss of lives, bodily injuries, and property damage.

12. Following the Event, numerous claims were made and complaints were filed by Third-Party Plaintiffs in a variety of jurisdictions against MGM and other defendants (the "Underlying Litigation"). Presently, MGM is aware of in excess of 4,000 claimants who are seeking compensation from MGM for their claims arising out of the Event.

13. Third-Party Plaintiffs in the Underlying Litigation include estates of deceased persons, persons alleging bodily injuries of varying degrees of severity, and persons claiming various damages or injuries caused by the Event.

14. MGM disputes any liability arising out of the Event and is vigorously defending itself in all of the cases and from all of the claims that comprise the Underlying Litigation.

15. The Third-Party Plaintiffs in the Underlying Litigation are represented by some of the most prominent plaintiffs' law firms in the country.

**The Zurich Policy**

16. Zurich sold to MGM Primary Commercial General Liability Insurance Policy No. GLO 4279885-09 for the policy period from July 1, 2017 to July 1, 2018 (the "Zurich Policy"), providing an "Each Occurrence" Limit of $1,000,000. MGM Resorts is the Named Insured on the Zurich Policy, and by way of a Broad Form Named Insured endorsement, each of the MGM-subsidiary Plaintiffs is also a Named Insured. A true and correct copy of the Zurich Policy is attached hereto as Exhibit "A."

17. In the Zurich Policy, Zurich promises, among other things, to defend MGM from claims and cases like the Underlying Litigation, arising from Occurrences like the Event, without regard to the policy's limit of liability.

18. More specifically, subject to various terms and conditions, the Zurich Policy provides coverage for third parties' claims and suits alleging "bodily injury" or "property damage" during the policy period that result from an "occurrence," which means an "accident, including continuous or repeated exposure to substantially the same general harmful conditions," and the policy includes a duty to defend against such claims and suits.

19. The Coverage A Insuring Agreement states: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages….But: . . . (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements . . . ."

20. The Zurich Policy applies in excess of a self-insured retention, for which MGM is responsible, pursuant to an endorsement titled, "Self Insured Retention" (the "SIR Endorsement"). The Zurich Policy is designed and intended, and reasonably was expected by MGM, to provide broad coverage for the most serious claims that MGM could face

21. Responsibility for the costs of the defense of MGM is addressed in the SIR Endorsement. MGM must pay for the defense of claims arising from the Event up to the limit of a

single $500,000 SIR, and subsequently Zurich must pay for all of MGM's Defense Costs, including Supplementary Payments, until such time as Zurich exhausts the limit of liability by paying settlements or judgments.

22. The SIR Endorsement allows discretion to MGM in controlling the course of the defense and the management and the settlement of claims.

23. As defined by the SIR Endorsement, "Defense Costs" means "Expenses directly allocable to specific claims and shall include but not be limited to all Supplementary Payments as defined under the policy; all court costs, fees and expenses; costs for all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution; interest; investigative services, medical examinations, autopsies, medical costs containment, declaratory judgment, subrogation and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or loss under the policy…."

24. In excess of the Each Occurrence Limit of the Zurich Policy, MGM is protected by various other insurance policies sold by other insurance companies, each of which also provides a duty to defend MGM without regard to those policies' various limits of liability.

25. In addition to the duty to defend, Zurich is obligated, and agreed, to pay for potential judgments and reasonable settlements recommended by defense counsel in relation to the Underlying Litigation.

26. Zurich is obligated to provide a complete and undivided defense to MGM for the Underlying Litigation until Zurich's policy is exhausted by actual payment of the full policy limit for judgments and reasonable settlements recommended by defense counsel and completion of the settlement process.

27. Where the full policy limit is paid or agreed to be paid toward a reasonable settlement, Zurich's duty to defend and duty of good faith and fair dealing require Zurich to protect MGM by completing the full settlement process for which the settlement payment is made, including through the process of executing a settlement agreement, securing a good faith settlement determination, dismissing pending lawsuits, and signing and exchanging releases for the protection

of MGM.

28. Whether considered as part of the duty to defend and pay Defense Costs or as part of the duty to pay Supplementary Payments under the Zurich Policy, Zurich's duties include the obligation to pay expenses and costs required for the administration of settlement issues, including settlement administration costs and a settlement administrator's fees.

**MGM's Response to the Event and Agreement with Zurich on the Defense Team**

29. Following the Event, consistent with its obligations under the SIR Endorsement, MGM urgently retained a competent defense team, provided notice as mentioned above to Zurich and other insurers, and immediately sought consent to the defense team's retention.

30. Given the magnitude of the Event, MGM had exhausted its SIR shortly after the Event through the retention and immediate deployment of defense counsel, experts and consultants necessary to the protection of the companies' interest.

31. As the result of certain disagreements among MGM and the insurers and resulting negotiations regarding the composition of the defense team and particular members of the team that MGM, Zurich, and other insurers either desired to include or exclude, the specific law firms and members of the defense team changed.

32. As a result of involved and informed discussions between MGM, on the one hand, and its insurers, on the other hand, the members of MGM's defense team members were all agreed upon between MGM, Zurich and other excess insurers of MGM that are not parties to this Action.

33. MGM and Zurich and other insurers of MGM ultimately agreed on a roster of law firms, defense team members, experts, consultants and vendors, and agreed on hourly rates for each member, to be adjusted annually, as well as the responsibilities of lead counsel, MGM and Zurich.

**Zurich and MGM's Agreement on Defending the Claims**

34. Following MGM's notice to Zurich of the Underlying Litigation, MGM and Zurich confirmed their understanding of their respective defense obligations. MGM and Zurich would work cooperatively to defend the cases, with defense counsel reporting jointly to the parties as directed by MGM, and with Zurich paying for the costs of defense, using firms, vendors and rates that were all negotiated and agreed. This understanding was reached over the course of discussions between

MGM, Zurich and others through the remainder of 2017 and in the first couple of months of 2018.

35. In short, Zurich agreed it would defend MGM against the Underlying Litigation without a reservation of rights using the agreed defense team, agreed vendors, agreed rates, and agreed methods of reporting to and consulting with MGM, the defense team and the other insurers.

36. MGM has fulfilled all of its obligations under the Zurich Policy following the Event. This includes consulting with Zurich and agreeing with Zurich on lead defense counsel and litigation team members; negotiating reasonable rates for team members; accepting various insurer demands, where possible; holding regularly-scheduled telephone conferences and in-person meetings; responding to questions and outreach; explaining and consulting on strategic decision-making; and paying attention to potential opportunities for resolution.

37. Zurich has not fulfilled all of its obligations under the Zurich Policy and has failed to perform as it agreed with MGM following the Event.  More specifically, Zurich has failed to pay for all reasonable Defense Costs, including substantial amounts due to retained attorneys, expert witnesses, consultants and other vendors that Zurich specifically approved.

**Zurich's Bad Faith Failure To Pay Defense Costs and Protect MGM**

38. Despite agreeing to defend MGM and to pay Defense Costs in the Zurich Policy, despite specifically agreeing on MGM's litigation team members and reasonable rates for their services, and despite repeated objections, warnings and demands from MGM about long-unpaid defense team members or expenditures, Zurich has failed to pay all reasonable, approved Defense Costs for numerous agreed litigation team members and vendors, without any explanation or excuse.

39. Presently, reasonable Defense Costs in the many millions of dollars have not been paid by Zurich for valuable services and time incurred, which Zurich previously agreed to pay.

40. By way of examples, Zurich has refused to pay the lead law firm defending MGM for a substantial portion of the work it has performed.  Other pre-agreed, critical defense vendors are separately being left unpaid by Zurich for such significant amounts that they may cease work and have threatened legal action against MGM, presenting a risk of loss of material evidence in the event certain experts and discovery vendors cease work.

41. Set forth as Exhibit "B," which is attached hereto and incorporated herein by

7

reference as if set forth in full, is a chart identifying the defense firms, experts and consultants that have been necessary to MGM's defense effort, but that Zurich has refused to reimburse at the agreed rates either partially or in full for services rendered to MGM after disclosure to Zurich and with ongoing updates to it.

42. By failing to pay Defense Costs in a timely manner despite notice of this serious problem and repeated opportunities to cure or explain the issue, Zurich has breached the duty to defend and is acting in bad faith towards MGM, has breached the implied covenant of good faith and fair dealing, and has violated Nevada's Unfair Claims Practices Act.

43. As a direct and foreseeable result of Zurich's bad faith conduct and breach of its duty to defend, the defense of MGM has been directly jeopardized.

44. As a direct and foreseeable result of Zurich's bad faith conduct and breach of its duty to defend, MGM has been forced to pay certain of the unpaid Defense Costs itself to attempt to mitigate the foreseeable damages resulting from Zurich's actions and failures to act.

45. Although Zurich has been warned repeatedly of the danger of non-payment to the course of the continued defense of MGM and the potential prejudice that could result to MGM in a variety of ways, Zurich disregarded the warnings and continues to refuse to make payments, without any meritorious explanation.

46. The parties Zurich has declined to pay include lawyers, experts, and vendors in multiple states who have devoted significant time and resources to helping MGM through a crisis that has no precedent in U.S. history. For Zurich to refuse to abide its obligation to pay these defense team members in this circumstance is unconscionable.

47. Severely aggravating Zurich's behavior in failing to honor its duty to defend by paying agreed attorneys, experts and vendors for months on-end, Zurich has repeatedly, willfully thwarted MGM's ability to fully understand and correct the problems Zurich created.

48. Despite repeated requests, Zurich refused and/or delayed severely in providing any type of list or summary regarding how Zurich is addressing payment (or non-payment) of Defense Costs. Recently, although Zurich responded to MGM concerning a list of invoices and payments believed to be due that was provided by MGM, Zurich has still refused to provide any detailed

explanation of the rationale behind its reasons for non-payment of invoices for services that were necessary and indispensable to the defense of MGM.

49. Despite repeated requests, Zurich has refused and/or repeatedly delayed meeting with or otherwise communicating with MGM regarding its intentions to pay Defense Costs and to satisfy members of the defense team who have been left unpaid for substantial lengths of time.

50. At best, Zurich's payment decisions have been arbitrary and with complete disregard for MGM's interests; at worst, Zurich's payment decisions have been calculated by Zurich in bad faith, to attempt to extract concessions from MGM on unrelated and insignificant points and to attempt to terminate Zurich's duty to provide a further defense to MGM. These actions further Zurich's interest only at the expense of the interest of MGM that Zurich should be protecting first and foremost.

51. Zurich's performance of its duty to defend has been erratic from the beginning of the Underlying Litigation. Last year, after significant delays by Zurich with no payments to the defense team that required MGM's intervention, MGM learned that attorneys and vendors reportedly received substantial initial payments for their work in relation to the defense of the Underlying Litigation. After those initial payments, Zurich stopped performing or performed only intermittently, grudgingly and incompletely.

52. When MGM raised strong concerns about the slow pace of payments and non-payments last year, Zurich made some partial payments following a meeting with MGM, but Zurich then resumed its earlier pattern and did not continue making payments. When asked to pay, Zurich has provided superficial reasons that are completely false and groundless.

53. Rather than treating MGM and the hard-working defense team fairly, Zurich has raised numerous hurdles to paying the defense team and protecting MGM with a vigorous defense. The precise issues remain unknown, but appear to include Zurich using technical requirements to excuse a desire to pay nothing for as long as possible. These issues have never been clearly spelled out for the firms and other vendors doing work for MGM.

54. Zurich has refused to engage meaningfully in defense counsel's efforts to question or discuss litigation guidelines, billing guidelines, case and matter budgets, and scopes of work, which

are unreasonable or inapplicable to the Underlying Litigation and coordination of the numerous, complex claims and cases it involves. In fact, Zurich has sought to justify decisions not to pay defense counsel and vendors by referring to litigation guidelines that were not agreed upon and which were not provided to MGM or defense counsel until after much of the contested work had already been performed.

55. The scope and cost of the extensive defense work that has been performed on behalf of MGM (and indirectly for the protection of Zurich and other insurers) is no surprise to Zurich: Zurich from the start has been directly involved in reviewing the defense and approving strategic decisions.

56. Payment of costs for a defense is a necessary part of the duty to defend. By failing to pay costs associated with the duty to defend, Zurich is risking the loss of crucial attorneys, witnesses, experts, consultants and evidence, and threatening imminent damage to MGM, its policyholder and fiduciary.

57. Zurich's obligations include acting in good faith towards MGM and not placing its own interests ahead of MGM's interests. Having agreed to defend MGM, and having agreed to pay particular defense counsel, experts, and vendors, at agreed fees deemed to be reasonable, there is no good faith basis for Zurich's conduct in making no payments in some instances and substantially underpaying in others, or in providing no records regarding invoices or payment decisions.

58. Zurich is interfering with and jeopardizing MGM's defense in the Underlying Litigation and attempting to prevent defense counsel from exercising their independent judgment by withholding payments to defense counsel and their consultants and vendors and by attempting to interfere with defense counsel's deployment of important experts and consultants.

59. Zurich has demonstrated bad faith by unnecessarily and unreasonably delaying or refusing payment to defense counsel and retained experts and vendors, by rejecting advice of attorneys it agreed to engage to defend MGM, and by attempting to use payment of defense costs as a bargaining chip rather than performing this independent obligation in good faith. Zurich's brinksmanship is risking loss of valuable witnesses and attorneys who cannot be replaced cheaply, or in some cases at all.

60. Moreover, Zurich has repeatedly maneuvered to attempt to exhaust its policy limit outside of a global resolution, which would advance only Zurich's interests and not those of MGM, by ending Zurich's duty to defend prematurely.

61. As a result of Zurich's bad faith conduct and breach of its duty to defend, MGM clearly warned Zurich that MGM may be forced to pay the Defense Costs itself to avoid foreseeable damage that could result from Zurich's conduct, and then file suit against Zurich for breach of the duty to defend and bad faith. Zurich ignored all of MGM's warnings.

62. MGM's payment of certain Defense Costs following Zurich's selective performance of its duty to defend demonstrates the reasonableness of the Defense Costs.

63. Zurich is bound to reimburse MGM in full for all Defense Costs MGM has advanced, in addition to Zurich being bound to pay all Defense Costs MGM has not advanced as well as future Defense Costs to the defense team members directly, as previously agreed.

64. With regard to a settlement agreed to in principle, Zurich has further demonstrated bad faith by stating its intention not to pay for the costs of settlement administration or for settlement administrators' fees, even though these are a necessary and reasonable part of the complete defense of MGM, and a necessary and reasonable part of the settlement process for which settlement payments under the Zurich Policy would be made, and therefore qualify as both Defense Costs and Supplementary Payments that Zurich must pay outside the limit of liability of the Zurich Policy.

65. Zurich's position that payment of costs of settlement administration or for settlement administrators' fees will reduce the Zurich Policy's limit of liability, rather than being paid as Defense Costs or Supplementary Payments, is not a reasonable interpretation of the Zurich Policy, but is consistent with Zurich's self-interested acts in refusing to pay incurred Defense Costs and attempting to end the duty to defend prematurely as described above.

66. Zurich's conduct is oppressive, fraudulent and malicious and warrants the imposition of punitive damages.

## COUNT I

### Breach of Contract – Duty to Defend

67. MGM repeats and incorporates the allegations set forth in Paragraphs 1 – 66 of this

11

Complaint, as if fully set forth herein.

68. MGM and Zurich are parties to the Policy, which is a valid and existing contract.

69. The Zurich Policy expressly obligated Zurich to perform its duty to defend MGM in excess of the SIR amount set forth in the SIR Endorsement. Zurich agreed to defend claims arising from the Event without a reservation of rights.

70. The SIR was exhausted by payment of Defense Costs.

71. Following exhaustion of the SIR, Zurich began to perform its duty to defend, but Zurich subsequently ceased or materially curtailed its performance of its duty, without excuse.

72. Despite agreement in the Zurich Policy before the Event and confirming agreements with MGM following the Event, Zurich has failed and refused to perform completely and reasonably its duty to defend MGM from the Underlying Litigation, by failing to pay substantial amounts for incurred Defense Costs, and by stating it would not pay required settlement administration costs or settlement administrators' fees, contrary to the parties' intentions and MGM's reasonable expectations for coverage.

73. Because Zurich has failed to perform its duty to defend MGM, MGM has been forced to take action to protect the continued viability of MGM's defense and ensure that critical vendors and attorneys did not abandon the defense due to non-payment.

74. More specifically, although MGM provided Zurich with numerous opportunities and repeatedly demanded that Zurich pay the amounts due, Zurich through its silence and inaction forced MGM to pay for certain of the unpaid Defense Costs itself to avoid members of the defense team ceasing work, and forced MGM to institute this civil action seeking damages and other relief from Zurich.

75. By refusing to perform the duty to defend and arbitrarily refusing to pay Defense Costs to agreed vendors and attorneys, Zurich has breached the Zurich Policy.

76. As a direct and proximate result of Zurich's breaches of contract, MGM has been deprived of the benefits of its coverage and incurred direct damage in excess of $75,000 on account thereof.

77. Accordingly, Zurich is liable to MGM for all damages sustained as a result of its

12

breaches of its duty to defend, including actual, expectancy, and consequential damages, together with interest.

78. As a reasonably foreseeable consequence of Zurich's breach, it has been necessary for MGM to retain counsel to bring this Complaint. Accordingly, MGM is entitled to recover its attorneys' fees and costs incurred herein.

79. As a reasonably foreseeable consequence of Zurich's breach, MGM's defense counsel and defense vendors have been forced to incur numerous hours of wasted time and costs attempting to obtain payment of amounts due to them for MGM's defense and engage in unnecessary dialogue with Zurich regarding unpaid invoices and to explain why payments should be made. Accordingly, MGM is entitled to recover for these additional consequential damages.

## COUNT II

### Declaratory Judgment – Breach of Duty to Defend

80. MGM repeats and incorporates the allegations set forth in Paragraphs 1 – 79 of this Complaint, as if fully set forth herein.

81. Zurich has a complete duty to defend MGM with respect to the Underlying Litigation, which is potentially covered by the Zurich Policy. Therefore, Zurich must defend MGM completely in the Underlying Litigation.

82. Zurich is obligated to defend MGM completely until Zurich makes actual payment of its full limit of liability for judgments or reasonable settlements recommended by defense counsel.

83. Zurich is obligated when a settlement is agreed to continue defending MGM through completion of the settlement process for which the settlement payment is made, including through execution of relevant settlement agreements, securing good faith settlement determinations where necessary, dismissing pending lawsuits, paying settlement proceeds into a qualified settlement fund, and signing and exchanging releases for the protection of MGM. Zurich is further obligated to pay expenses and costs required for the administration of settlement issues, including settlement administration costs and settlement administrators' fees necessary to resolution of a settlement.

84. An actual controversy exists between MGM and Zurich as to whether Zurich's duty to defend requires Zurich to pay for all of the Defense Costs that have been incurred and that will be

incurred by MGM in the defense of the Underlying Litigation, which requires this Court to enter an order declaring the rights and liabilities of the parties.

85. An actual controversy exists between MGM and Zurich as to whether Zurich's duty to defend MGM continues through the actual payment of the Zurich Policy limit together with completion of the full settlement process including the exchange of releases for the protection of MGM, which requires this Court to enter an order declaring the rights and liabilities of the parties.

86. The justiciable controversy between the parties is ripe for judicial determination.

## COUNT III

**Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing (Bad Faith)**

87. MGM repeats and incorporates the allegations set forth in Paragraphs 1 – 86 of this Complaint, as if fully set forth herein.

88. MGM and Zurich are parties to the Zurich Policy, which is a valid and existing contract.

89. MGM performed all of its obligations under the Zurich Policy, but Zurich has not.

90. In Nevada, there is a special implied covenant of good faith and fair dealing between an insurer and an insured or policyholder.

91. Under the duty of good faith and fair dealing, Zurich owes MGM a duty to put MGM's interests equal to or ahead of its own interests, and to do nothing to deprive MGM of policy benefits.

92. An insurance company like Zurich fails to act in good faith (and acts in bad faith) when it refuses without proper cause to compensate the insured for a loss covered by a policy, or refuses to pay for the costs of defending it against litigation that is or may be covered by the insurance policy.

93. Zurich breached the implied covenant of good faith and fair dealing by refusing and failing without proper cause to perform its duty to defend its policyholder, MGM, under the Zurich Policy with respect to the Underlying Litigation.

94. By repeatedly refusing to pay Defense Costs, without excuse, and by attempting to condition performance of the duty to defend on extraction of unreasonable and unrelated concessions

14

from MGM designed to exhaust Zurich's coverage so as to serve Zurich's own self-interest, Zurich failed to put MGM's interests equal to or ahead of their own interests.

95. Zurich's conduct was conscious and deliberate, willful, wanton, and reckless in disregard to MGM's interest in a full and complete defense in the Underlying Litigation, and in conscious disregard to the consequences to MGM, to such extent as to constitute oppression, fraud and/or actual malice toward MGM.

96. As a direct and proximate result of the Zurich's tortious and actionable conduct, MGM has sustained actual damages as set forth in greater length above, including, but not limited to, consequential damages, attorney's fees foreseeably paid as a result of Zurich's breaches, and other special damages relating to the costs of prosecuting this litigation, to be determined at trial.

97. As a result of Defendants' tortious conduct, and oppression, fraud or malice, express or implied, MGM is also entitled to punitive damages under NRS § 42.0005(1).

## COUNT IV

### Violation of Unfair Claims Settlement Practices Act (Nev. Rev. Stat. Ann. § 686A.310)

98. MGM repeats and incorporates the allegations set forth in Paragraphs 1- 97 of this Complaint, as if fully set forth herein.

99. Nevada's Unfair Claims Settlement Practices Act (the "Act") found in Nevada Revised Statute § 686A.310, specifies unfair practices by insurance companies and provides means to enforce these provisions.

100. Although violations of the Act may overlap somewhat with violations of the covenant of good faith and fair dealing, the Act provides additional remedies for other violations that may not amount to bad faith.

101. Among other things, the Act permits insureds to seek redress for the manner in which an insurance company handles a claim, regardless of whether the claim is denied.

102. Under the duty of good faith and fair dealing and the Act, Zurich owes MGM a duty to put MGM's interests equal with or ahead of its own interests, and to do nothing to deprive MGM of policy benefits. Zurich acted in bad faith and violated the Act by failing to put MGM's interests equal to or ahead of its own interests, by failing to discharge contractual duties without reasonable

grounds or good cause, by refusing to provide any explanations or accountings for its actions and inactions, and by knowingly, intentionally or recklessly disregarding that its actions are depriving MGM of important policy benefits.

103. Among other things, Zurich violated the Act and engaged in unfair practices in the following ways: (b) "Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies"; (c) "Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies"; (e) "Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear"; (f) "Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered"; (l) Failing to settle claims promptly, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage"; and (n) "Failing to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim."

104. Zurich failed to act in good faith and violated the Act when it refused without proper cause: to compensate MGM for a loss covered by the policy, to pay for the costs of its defense, to respond to MGM's questions and demands, to provide any explanation or accounting for its failures to pay, or to assist MGM in remedying its bad faith, even though Zurich knew or disregarded the fact there was no reasonable basis for its refusals.

105. Zurich further failed to act in good faith and violated the Act when it attempted to use its willful refusal to pay Defense Costs as leverage against its own policyholder to attempt to exhaust its coverage limit prematurely so as to end the duty to defend, without regard to the best interests of the policyholder and the ongoing defense of the Underlying Litigation.

106. Zurich further failed to act in good faith and violated the Act when it stated it would not pay for reasonable and necessary settlement administration costs or settlement administrators'

fees either as Defense Costs or as Supplementary Payments, without regard to the best interests of the policyholder and reasonable efforts to resolve the Underlying Litigation.

107. Zurich acted in bad faith and violated the Unfair Claims Practices Act by engaging in unfair insurance practices in the ways set forth at greater length above. Accordingly, Zurich is liable to MGM for all damages sustained as a result of its conduct in violation of the Act

108. As a result of Defendants' tortious conduct, and oppression, fraud or malice, express or implied, MGM is also entitled to punitive damages under NRS § 42.0005(1).

## **PRAYER FOR RELIEF**

WHEREFORE, MGM respectfully prays that this Court:

1. Award MGM its actual damages sustained as a result of Zurich's breach of its duty to defend in the Underlying Litigation, including but not limited to MGM's costs to defend (and potentially settle) the Underlying Litigation, and MGM's attorneys' fees and costs of court for this Action in an amount to be established through proof but which amount is in excess of $75,000;

2. Award MGM consequential damages proximately caused by and flowing from Zurich's tortious breach of the implied covenant of good faith and fair dealing, including but not limited to MGM's costs to defend (and potentially settle) the Underlying Litigation (which amount is in excess of $75,000), MGM's attorneys' fees and costs of court for this Action (which amount is in excess of $75,000), and MGM's defense counsel's and vendors' additional costs incurred in attempting to recover their fees and costs from Zurich (which amount is in excess of $75,000);

3. Award MGM damages sustained as a result of Zurich's violation of Nevada's Unfair Claims Settlement Practices Act, including but not limited to MGM's costs to defend (and potentially settle) the Underlying Litigation (which amount is in excess of $75,000), MGM's attorneys' fees and costs of court for this Action (which amount is in excess of $75,000), and MGM's defense counsel's and vendors' additional costs incurred in attempting to recover their fees and costs from Zurich (which amount is in excess of $75,000);

4. Award MGM the declaratory relief requested herein;

5. Award MGM punitive damages;

5. Award MGM pre-judgment interest and post-judgment interest;

17

6. Award MGM costs of court;

7. Award MGM its attorneys' fees; and

8. Award MGM such other and further relief to which it may be entitled.

## JURY DEMAND

MGM demands a trial by jury for any and all issues so triable.

DATED this 19th day of June, 2019.

                SEMENZA KIRCHER RICKARD

                */s/ Jarrod L. Rickard*
                Lawrence J. Semenza, III, Esq., Bar No. 7174
                Jarrod L. Rickard, Esq., Bar No. 10203
                10161 Park Run Drive, Suite 150
                Las Vegas, Nevada 89145

                John N. Ellison, Esq.
                (*pro hac vice* application forthcoming)
                David M. Halbreich, Esq.
                (*pro hac vice* application forthcoming)
                REED SMITH LLP
                Three Logan Square
                1717 Arch Street Suite 3100
                Philadelphia, PA 19103

                *Attorneys for MGM Resorts International, Mandalay Bay LLC, Mandalay Resorts Group, MGM Resorts Festival Grounds, LLC and MGM Resorts Venue Management, LLC*